United States District Court
Southern District of Texas
**ENTERED**
July 02, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| NIMA HAJIMORAD, | § | |
| *Petitioner,* | § | |
| | § | |
| v. | § | Civil No. 5:26-cv-00420 |
| | § | |
| DAVID COLE, | § | |
| MIGUEL VERGARA, | § | |
| MARKWAYNE MULLIN, | § | |
| and TODD BLANCHE, | § | |
| *Respondents.* | § | |

**REPORT AND RECOMMENDATION**

Petitioner brings this 28 U.S.C. § 2241 action challenging his continued detention. Dkt. No.1. Respondents filed a Motion for Summary Judgment. Dkt. No. 9. Following a review of the law and facts, the undersigned **RECOMMENDS** that the Motion for Summary Judgment, Dkt. No. 9, be **DENIED**, and Petitioner's Petition, Dkt. No.1, be **GRANTED**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Mr. Nima Hajimorad ("Petitioner") is a twenty-four-year-old citizen of Iran. Dkt. No. 1 at ¶¶ 16, 21; Dkt. No. 1-1 at ¶ 2. He does not have ties, residences, or citizenship in any other country. Dkt. No. 1 at ¶ 21; Dkt. No. 1-1 at ¶ 3. He fled from Iran after being persecuted and tortured by the Iranian regime for expressing anti-government views. Dkt. No. 1 at ¶¶ 16, 22; Dkt. No. 1-1 at ¶ 4. He further declared his fear of removal to Iran or any third country that may subsequently transport him to Iran, due to the threat of further persecution. Dkt. No. 1 at ¶¶ 28, 36; Dkt. No. 1-1 at ¶ 11.

On or around December 31, 2024, Petitioner illegally entered the United States and was immediately detained by Immigration and Custom Enforcement ("ICE"), and he has remained in custody since that time. Dkt. No. 1 at ¶ 23; Dkt. No. 9-1 at ¶ 7. Petitioner was transferred to the Rio Grande Processing Center in Laredo, Texas, on March 29, 2025, and remains detained at the Rio Grande Processing Center to the present day. Dkt. No. 1 at ¶ 26; Dkt. No. 1-1 at ¶ 6; Dkt. No. 9 at 1; Dkt. No. 9-1 at ¶ 6. On August 19, 2025, an Immigration Judge ("IJ") granted Petitioner withholding of removal under the Immigration and Nationality Act ("INA").[1] Dkt. No. 1 at ¶ 16; Dkt. No. 1-1 at ¶ 7; Dkt. No. 1-2; Dkt. No. 9 at 2. The IJ's order designated Iran as the only potential country of removal of Petitioner but simultaneously withheld his removal to Iran. Dkt. No. 1 at ¶ 16; Dkt. No. 1-2. The IJ's order became final on September 18, 2025, as neither Petitioner nor the Department of Homeland Security ("DHS") filed any appeal to the Board of Immigration Appeals ("BIA"). Dkt. No. 1 at ¶ 25; Dkt. No. 1-2. Accordingly, Petitioner remains in detention pending his removal pursuant to 8 U.S.C. § 1231(a). At the time of writing this Report and Recommendation, Petitioner has been detained for approximately eighteen months, including more than 280 days since the IJ's order became administratively final.

Petitioner also alleges that he never received any response or update from any of the required DHS post-custody reviews on his detention. Dkt. No. 1 at ¶ 27; Dkt. No.1-1 at ¶¶ 9–10; *see* 8 C.F.R § 241. Petitioner further alleges that DHS officers had not communicated with him regarding any potential third-country removal. Dkt. No. 1 at ¶ 27; Dkt. No. 1-1 at ¶ 8. On October 17 and 20, 2025, ICE Enforcement and Removal Operations ("ERO") sent emails to Refugee and International Operations ("RIO") and the State Department requesting assistance in third-county

[1] During the May 28 Hearing [hereinafter Hr'g], Respondents erroneously relied on a typo in the Declaration of Deportation Officer Ricardo Rodriguez, Dkt. No. 9-1, stating that the IJ's Order was dated August 29, 2025. Hr'g at 9:43–48. The parties and the Court confirmed that the IJ's Order was dated August 19, 2025. Dkt. No. 1-2.

removal. Dkt. No. 9 at 2; Dkt. No. 9-1 at ¶ 11–12. On February 21, 2026, ERO sent requests of removal to Honduras and Belize. Dkt. No. 9 at 2; Dkt. No. 9-1 at ¶ 21. Honduras rejected the request. Dkt. No. 9 at 2; Dkt. No. 9-1 at ¶ 21. There is no response from Belize yet. Dkt. No. 9 at 2; Dkt. No. 9-1 at ¶ 22; Hr'g at 9:41–42. Respondents advised that Belize has previously agreed to accept third-country removals from the United States by agreement. Hr'g at 9:42. ERO also sent a request to Costa Rica, which was denied in February. Dkt. No. 9-1 at ¶¶ 18–19.

Petitioner filed his Emergency Petition for a Writ of Habeas Corpus on March 17, 2026. Dkt. No.1. Petitioner prayed the court to (1) declare that Petitioner's continued detention is unlawful, (2) issue immediate release of Petitioner, and (3) provide Petitioner and his counsel with written notice in the event of third-country removal. *Id.* Respondents moved for Summary Judgment on two grounds: (1) Petitioner's continued detention is lawful, and (2) the government is entitled to perform third-country removals which the Court lacks jurisdiction to review. Dkt. No. 9. Petitioner then filed a reply stating that Respondents' Motion lacks substance and reaffirming his arguments for relief. Dkt. No. 10. The Court held a hearing on May 28, 2026. Respondents then argued that Petitioner's claim was not ripe and the Court lacks jurisdiction. Hr'g at 9:40; Dkt. 17 at 1. For the following reasons, the undersigned agrees with Petitioner that the Motion for Summary Judgment should be denied, and his Petition should be granted.

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing the absence of a genuine dispute of material fact by pointing to specific portions of the record that supports such conclusion; if it does so, the burden

shifts to the non-movant to identify specific portions of the record that create a genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); Fed. R. Civ. P. 56(c)(1). A dispute is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986), and a fact issue is material only if "its resolution could affect the outcome of the action," *Canady v. Davis*, 687 F. App'x 362, 365 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013)). And "[i]f the moving party fails to meet its initial burden, the motion for summary judgment must be denied." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 697 (S.D. Tex. 2025) (citing *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014)). The "judgment as a matter of law" inquiry under Rule 56 "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)," *Anderson*, 477 U.S. at 250, which permits judgment only where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).

**B. The *Zadvydas* Framework**

Generally, when an alien is ordered removed, they must be removed within ninety days. 8 U.S.C. § 1231(a)(1)(A). The alien shall be detained during this removal period. 8 U.S.C. § 1231(a)(2)(A). An inadmissible alien who has been ordered removed may be held beyond the removal period. 8 U.S.C. § 1231(a)(6). When deciding the constitutionality of an alien's continued detention for the purpose of removal, courts use the *Zadvydas* framework as the legal standard. *See Zadvydas v. Davis*, 533 U.S. 678 (2001); *Clark v. Martinez*, 543 U.S. 371 (2005). In *Zadvydas*, the Supreme Court construed § 1231(a)(6) to avoid the constitutional problem of indefinite detention by limiting post-removal-order detention to a period reasonably necessary to effectuate removal. 533 U.S. at 689. The Court recognized six months as the presumptively

reasonable period of post-order detention. *Id.* at 701.[2] After that six-month period, if the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the Government to "respond with evidence sufficient to rebut that showing." *Id.* The detention inquiry is therefore practical, not merely theoretical: continued detention is permissible only so long as removal remains significantly likely in the reasonably foreseeable future. *See Clark*, 543 U.S. 378.

*Zadvydas* recognized six months as the presumptively reasonable period of post-order detention, but it did not create a categorical rule that detention is always lawful before that period ends. *Clark*, 543 U.S. at 384. Rather, the six-month period operates as a presumption for administrability. *Zadvydas*, 533 U.S. at 701. *Zadvydas* did not hold that the Government is free to detain a noncitizen until the detention reaches constitutional limits. *Clark*, 543 U.S. at 384. In *Clark*, the Supreme Court rejected that understanding, explaining that *Zadvydas* construed the statute to authorize detention only for a period reasonably necessary to effectuate removal, not to permit detention until the Constitution is nearly violated. *Id.* Consistent with that reasoning, courts in this district have recognized that the six-month presumption "is not a bright line" and does not automatically authorize detention in every case before the period expires. *See, e.g.*, *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020); *Sanchez*, 2025 WL 3760317 at *7 ("The Court is not persuaded that this presumptively reasonable period is necessarily preclusive

[2] Courts have differed in how they describe that presumptively reasonable period. *Zadvydas* itself used the language of "six months." 533 U.S. at 701. Some lower courts, including courts in this District, have operationalized that period as 180 days. *See Sanchez v. Noem*, Civil Action No. 5:25-CV-00104, 2025 WL 3760317, at *7–8 (S.D. Tex. Nov. 14, 2025); *Zhu v. Noem*, Civil Action No. 5:25-CV-00239, 2025 WL 4710076, at *7 (S.D. Tex. Nov. 14, 2025). Other courts have adhered more closely to the Supreme Court's "six-month" formulation. *See Khoury v. Garite*, EP-25-CV-00577-DCG, 2026 WL 1179822, at *7–8 (W.D. Tex. Apr. 21, 2026); *Rodriguez Romero v. Ladwig*, 25-1106-JWD-EWD, 2026 WL 321437, at *11 (M.D. La. Feb. 6, 2026). But the distinction does not control here. Courts have often treated the two formulations as functionally synonymous, and at least one court in this District has expressly observed that "courts, including this one, have understood the six-month presumption to be a period of 180 days which comports with DHS's post-removal custody review procedures." *Nguyen v. Noem*, Civil Action No. 5:25-CV-176, 2026 WL 237282, at *10 (S.D. Tex. Jan. 28, 2026).

rather than rebuttable.”). Because the relevant inquiry remains whether removal is significantly likely in the reasonably foreseeable future, the Court may proceed to the merits if the record permits that determination.

## III. DISCUSSION

Federal district courts have jurisdiction under 28 U.S.C. § 2241 to hear habeas claims by noncitizens challenging the lawfulness of their detention by immigration authorities. *Zadvydas*, 533 U.S. at 687; *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished). Moreover, in *Zadvydas* itself, the Supreme Court clarified that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." 533 U.S. at 688. This Court also has federal question jurisdiction as the question of an alien's post-removal-order detention arises from the Immigration and Nationality Act ("INA"). 28 U.S.C. § 1331.

Respondents erred in arguing that the Court lacks jurisdiction over the present case and conflated the inquiries regarding post-order *detention* with those regarding the *execution* of the removal itself. Dkt. No. 9 at 6. Namely, Respondents relied on *Diaz Turcios v. Oddo* and *C.R.L. v. Dickerson*, noting correctly that 8 U.S.C. § 1252 strips district courts of jurisdiction over certain challenges to removal orders related to the government's *execution* of an order of removal. *See Diaz Turcios v. Oddo*, 2025 WL 1904384, at *5 (W.D. Pa. 2025) (finding that § 1252(g), § 1252(a)(5), and § 1252(b)(9) barred review of petitioner's claim); *C.R.L. v. Dickerson*, 2025 WL 1800209, at *2 (M.D. Ga. 2025) (finding that § 1252(a)(5) and § 1252(b)(9) barred consideration of a similar claim). Nevertheless, the Supreme Court affirmed a narrow reading of the scope of § 1252. The Court clarified that "the applicability of § 1252(b)(9) turns on whether the legal

questions that we must decide 'aris[e] from' the actions taken to remove these aliens" and that "[w]e did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–83 (1999)). In other words, "[a]lthough several sections of the INA curtail the jurisdiction of federal district courts in immigration [proceedings] . . . none of these jurisdiction stripping provisions bar [the courts] from hearing a habeas petitioner's challenge to their detention, as opposed to their deportability." *Trejo v. Warden of ERO El Paso East Montana*, 807 F. Supp. 3d 697, 703 (W.D. Tex. 2025).

In addition to their jurisdictional challenges, Respondents further raise a ripeness objection to Petitioner's claim. In their latest advisory and during the May 28 Hearing, Respondents claimed that the date of the filing was either within or near the ending of the "presumptively reasonable" period that the government is entitled to under *Zadvydas*. Hr'g at 9:40; Dkt. 17 at 1.[3] Therefore, they argue Petitioner's claim is not ripe. Hr'g at 9:40–41. The parties agreed during the May 28 Hearing that the filing date was extremely close to the ending of the *Zadvydas* "presumptively reasonable" period. Hr'g at 9:40. The Fifth Circuit ruled that ripeness requires that "the harm asserted has matured sufficiently to warrant judicial intervention." *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 267 (5th Cir. 2015) (internal quotations omitted) (quoting *Miss.*

---

[3] The IJ issued the removal order on August 19, 2025. Petitioner contends that the order became administratively final on September 18, 2025, "which meant that on March 17, 2026, when we filed Mr. Hajimorad's petition, 180 days had passed." Hr'g at 9:45–46. Respondents contend that Petitioner's claim became ripe on March 19, 2026, and that his March 17, 2026, filing was therefore two days premature. Hr'g at 9:48. Petitioner waived appeal of the IJ's decision, but Respondents reserved their right to appeal. Dkt. No. 1-2 at 5. Because Respondents did not appeal to the BIA within the one-month appeal period, that period lapsed on September 18, 2025, making the order administratively final on that date. Counting 180 calendar days from September 18, 2025, the presumptively reasonable six-month period ended on March 17, 2026, the same date Petitioner filed his habeas petition. The Court therefore treats March 17, 2026, as the operative date that the presumptively reasonable detention period lapsed.

*State Democratic Party v. Barbour*, 529 F.3d 538, 544–45 (5th Cir. 2008)). Here, the Court concludes that Petitioner had been detained for six months at or around the time he filed this case. Even if Petitioner filed the case two calendar days short of the end of the presumptively reasonable period, these days would not alter Petitioner's length of detention enough to change the "maturity" of Petitioner's "harm suffered and asserted" here.[4] *See id.* It is therefore recommended that the Court may treat the *Zadvydas* "presumptively reasonable" period of detention as fully lapsed.

Having concluded that the Court has jurisdiction and no ripeness issue bars review, the undersigned turns to the merits of Petitioner's claim and Respondents' Motion for Summary Judgment. Petitioner claims that his continued detention is unlawful because his removal is not reasonably foreseeable and indefinite detention would violate his due process rights. Dkt. No. 1. Respondents move for summary judgment on the grounds that (1) the Petitioner failed to show that there is no "significant likelihood of removal" in the reasonably foreseeable future, and (2) Petitioner's removal to a third country is unreviewable by this court provided that the Petitioner was given the chance to express fear within the agency's review channels. Dkt. No. 9 at 3–9. The Petitioner later responded that the Respondents failed to present sufficient evidence to show that they are entitled to summary judgment. Dkt. No. 10 at 8. Moreover, granting Respondents' motion for summary judgment requires a showing that Respondents are entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To establish that Respondents are entitled to judgment as a matter of

[4] In their latest advisory, the Respondents supplied three cases that they argue warrant case dismissal here due to premature filing: *Mahdi*, *Kahidze*, and *Tkachenko*. Dkt. No. 17 at 2; *Mahdi T. v. Warden, El Valle Det. Ctr.*, Civil Action No. 1:26-cv-100, 2026 WL 984349 (S.D. Tex. Apr. 9, 2026); *Kakhidze v. Venegas*, Civil Action No. 1:25-cv-00136, 2025 WL 2412854, at *1 (S.D. Tex. July 30, 2025); *Tkachenko v. Warden, El Valle Det. Ctr.*, Civil Action No. 1:26-cv-00321, 2026 WL 1532815 (S.D. Tex. May 19, 2026). We find Respondents' argument unconvincing. Upon a closer look, in both *Mahdi* and *Tkachenko*, the petition was filed only two months after detention, while in *Kahidze*, the petition was filed slightly over the four-month mark. *Kakhidze*, 2025 WL 2412854, at *1. For all three of these cases, there was a significant, substantive, and unreasonable discrepancy between the filing time and the *Zadvydas* "presumptive reasonable" six-month detention period, which warranted dismissal. Here, however, Petitioner would have filed prematurely by no more than a handful of days. *Mahdi*, *Kahidze*, and *Tkachenko* are not factually analogous to the case at the bar and their rulings thus have limited applicability here.

law, Respondents must make an unambiguous showing either that Petitioner has failed to satisfy his initial burden under *Zadvydas* or that, even if Petitioner has done so, Respondents have successfully rebutted that showing with sufficient evidence. Fed. R. Civ. P. 56(a)(1); *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Zadvydas*, 533 U.S. 678.

We begin our inquiry by addressing whether Petitioner has satisfied his burden under the *Zadvydas* framework. The IJ's withholding of removal to Iran, Petitioner's country of origin, combined with Honduras's and Costa Rica's rejection and Belize's lack of response since February 2026, show good reason for believing that Petitioner's removal is not reasonably foreseeable. *Trejo*, 807 F. Supp. 3d at 705–706 (holding that a lack of identifiable third-country removal does not make the removal foreseeable).

Because the IJ's order withholds Petitioner's removal to Iran, the only viable option for his removal at this juncture is for him to be removed to an acceptable third country. *See* 8 U.S.C. § 1231(b). However, third-country removals are extremely rare. *Johnson v. Guzman Chavez,* 594 U.S. 537 (2021) ("[O]nly 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country"). In fact, similar cases have illustrated the extreme rarity of third countries accepting Iranian nationals for removal purposes. *See, e.g.*, *Jamshidiparvar v. Thompson*, Case No. 5:25-CV-1326-JKP, 2026 WL 301070, at *6 (W.D. Tex. Feb. 2, 2026) (stating that requests of removal of an Iranian citizen were not accepted by Mexico, Colombia, and Turkey); *Soheiliestahbanati v. Bondi*, 5:26-CV-00154-FB-RBF, 2026 WL 1523727, at *4 (W.D. Tex. Mar. 30, 2026) (finding that "efforts to seek removal or otherwise relocate [the Iranian petitioner] to Austria and Switzerland are extremely unlikely given the applicable requirements for doing so" where Ecuador did not accept the petitioner either); *Rezaie v. Noem*, No. H-25-4525,

2026 WL 1328200, at *2 (S.D. Tex. Jan. 3, 2026) (finding that Sweden was unlikely to accept an Iranian citizen without Swedish dual-citizenship).

The recent conflict between the United States and Iran and the lack of formal diplomatic relations between the two countries render Petitioner's removal even more difficult to foresee. *See* U.S. DEP'T OF STATE, U.S. RELATIONS WITH IRAN (Apr. 1, 2022), https://2021-2025.state.gov/u-s-relations-with-iran/. Additionally, the fact that Petitioner has no citizenship, residence, ties, or connections to any other country further supports the belief that his removal is not reasonably foreseeable. Dkt. No.1 at 7. In fact, a sister court in the Western District of Texas recently ruled that the petitioner had met their burden in a similar situation. *Mahmoudpour v. Bondi*, Civil Action No. SA-25-CV-1877-FB, 2026 WL 1026982, at *2 (W.D. Tex. Mar. 19, 2026) ("[Petitioner] has withholding of removal to Iran, that he "holds no other nationality or citizenship except from Iran, that he 'has no ties to any other country,' and that, at the time of [Petitioner's] writing, '[f]ive countries ha[d] ignored Respondents' request to accept [him].' These circumstances easily meet the modest 'good reason' standard."). Moreover, Petitioner raised credible doubts that Respondents have followed the necessary steps to effectuate his removal to a third country, stating in his sworn declaration that "immigration officials have never told [him] that they inquired to a third country about [his] removal and whether that country would accept [him], nor have they informed [him] that a third country had agreed to accept [him]." Dkt. No. 1-1 at ¶ 8. Therefore, Petitioner has "met the burden to show good reason to believe his removal is not reasonably foreseeable". Fed. R. Civ. P. 56(a)(1); *Anderson*, 477 U.S. at 248; *Zadvydas*, 533 U.S. 678.

Once a petitioner makes the modest showing required under *Zadvydas*, the burden shifts to Respondents to rebut that showing with evidence sufficient to demonstrate a significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. Respondents must

"respond with evidence sufficient to rebut [a petitioner's] showing." *Id.* Due to the IJ's withholding of removal to Iran, third-country removal now remains the sole ground upon which Petitioner's removal could be effectuated.

Here, Respondents do not meet their burden. In fact, Respondents' Motion does little more than reiterate the *Zadvydas* definition of the Petitioner's burden without appealing to any material fact of the present case. Respondents identify only one pending request to Belize and general efforts to search for other possible receiving countries. Dkt. No. 9. But a pending request is not acceptance, and general diplomatic or administrative efforts are not a concrete plan for removal. *See Zhu*, 2025 WL 4710076, at *9 (rejecting Respondents' assertion that removal was reasonably foreseeable where they were merely "actively working with other agencies to identify and secure acceptance from a third country," because the record lacked "progress, concrete information, or plan"); *Trejo*, 807 F. Supp. 3d 697, 706 (finding "pending request[s] for travel documents" from third countries insufficient to rebut petitioner's showing). Respondents do not identify travel documents, a scheduled removal date, or any confirmation that Belize—or any other country—has agreed to accept Petitioner. At most, the record shows that third-country removal remains under consideration. Dkt. No. 9 at 2. This showing is insufficient under *Zadvydas*, which asks not whether removal remains theoretically possible, but whether the Government has shown a significant likelihood of removal in the reasonably foreseeable future. *See Mahmoudpour*, 2026 WL 1026982, at *2 (holding that pending third-country requests did not satisfy Respondents' burden absent acceptance or other concrete evidence that removal was likely). Accordingly, while Petitioner has satisfied his initial burden, Respondents have not rebutted that showing with evidence sufficient to establish a significant likelihood of removal in the reasonably foreseeable

future. Respondents therefore have not demonstrated entitlement to judgment as a matter of law, and their motion for summary judgment should be denied.

Finally, Petitioner prayed for adequate notice and meaningful opportunity to raise fear-based objections should he face any imminent third-country removal. Dkt. No. 1 at 19. The Court refrains from spilling much ink on the merits of this procedural due process claim given that such claim is premature. As discussed above, it is unlikely, as of the date of this Report and Recommendation, that Respondents will identify and effectuate any third-country removal for Petitioner in the reasonably foreseeable future. Still, Respondents have defended the adequacy of DHS's internal review procedures and have implied that, if a third-country removal appears on the horizon, Petitioner may not receive meaningful notice or an opportunity to raise fear-based objections. Dkt. No. 9 at 6-7. Some courts in this district have required heightened procedural protection in cases of third-country removal under similar circumstances. *See, e.g.*, *Zhu*, 2025 WL 4710076, at *10 ("[I]t is ORDERED that Respondents must provide at least ten days' written notice, including the name of the proposed country of removal . . . to Petitioner . . . ."); *see also Mbaba*, 2026 WL 917484 at *5 ("the Government provides Petitioner with at least (10) days' notice of the proposed country of removal"); *Vargas Istamo v. Perez*, Civil Action No. 5:25-CV-186, 2026 WL 1458583 (S.D. Tex. Feb. 3, 2026) ("Respondents must provide 10-day notice of any anticipated removal of Petitioner."). The undersigned finds that such measures may be appropriate in this case and recommends that Respondents be required to follow a similar process before removing Petitioner to a third country in this case. The undersigned leaves the precise scope of any such procedural requirements to the District Judge's discretion.

## IV. CONCLUSION

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Respondents' Motion for Summary Judgment, Dkt. No. 9, be **DENIED** and Petitioner's Petition for Writ of Habeas Corpus, Dkt. No.1, be **GRANTED**. If the District Court adopts this Report and Recommendation, the District Court should require Respondents to **RELEASE** Petitioner from custody to a public place. Should Respondents eventually locate a viable third country to which Petitioner will be removed, the undersigned further **RECOMMENDS** that the District Court order Respondents to provide Petitioner and his counsel written notice identifying the proposed country of removal ten (10) days in advance, affording Petitioner a meaningful opportunity to raise fear-based objections.

IT IS SO RECOMMENDED

Signed this July 2, 2026, in Laredo, Texas.

Diana Song Quiroga
United States Magistrate Judge

### *Warnings*

The parties may file objections to this Report and Recommendation, unless they waive the right to do so. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider

frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after being served with a copy of the Report—or the party's waiver of the right to do so—shall bar that party from de novo review by the District Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual findings and legal conclusions accepted by the District Court to which no objections were filed. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).